# Exhibit A

Stuart R. Day, WSB# 5-2244, sday@wpdn.net
Ryan J. Schwartz, WSB# 6-3611, rschwartz@wpdn.net
Ryan L. Ford, WSB# 7-4667, rford@wpdn.net
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
PO Box 10700
Casper, WY 82602
(307) 265-0700
(307) 266-2306 (facsimile)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RIA R SQUARED, INC., a Delaware corporation,  )<br>)<br>) | |
| Plaintiff  )<br>) | |
| v.  ) | Case No. _____ |
| ) | |
| PAUL D. MCCOWN, and  )<br>MCCOWN ENTERPRISES, LLC,  )<br>) | |
| Defendants  ) | |

STATE OF CALIFORNIA )
COUNTY OF Los Angeles ) ss.:

DAVID KANG, being of legal age, sound mind, and duly sworn, hereby states and alleges as follows:

1. I am the President and Chief Executive Officer of plaintiff Ria R Squared, Inc., which has lost more than $15 million due to a complex fraud orchestrated by defendant Paul D. McCown, who (among other things) forged bank statements and other documents purportedly issued by Wyoming Community Bank ("WCB") in Lander, Wyoming; impersonated and forged the signature of a WCB officer; and created and utilized a fraudulent e-mail address purporting to emanate from the bank.

2. Plaintiff, a Delaware corporation located in New York City, is a global alternative asset manager that applies its experience and expertise across global markets to deliver superior returns and minimize risk. Defendant McCown – the Chief Financial Officer of Wyoming Catholic College in Lander – resides in Lander and has represented himself to be the sole member of defendant McCown Enterprises, LLC, a Wyoming limited liability company also located in Lander.

3. At defendant Mr. McCown's request and pursuant to a promissory note and related documents, in May 2021 plaintiff extended a $15 million loan to McCown Enterprises based largely on Mr. McCown's fraudulent representations – supported by the forged and fraudulent documents referred to above and detailed below – that he held over $750 million in his personal account at WCB.

4. Those representations are now known to be entirely false. Immediately upon receiving the loan proceeds from Ria R Squared, Mr. McCown set about transferring the funds to various recipients, including but not limited to his relatives, his employer (through a supposedly "anonymous donation") and an additional company he appears to own and control.

5. Accordingly, I respectfully submit this affidavit in support of plaintiff's complaint and claims against McCown (in his individual capacity) and McCown Enterprises, with the request that the court grant immediate relief to halt the further dissipation of defendants' assets and further dissemination of the millions of dollars that were essentially stolen from our company under false and misleading pretenses.

## Background of the Relationship

6. Last year, an investment advisory firm (of which I am also the principal) affiliated with plaintiff was introduced to defendant McCown, in his capacity as CFO of Wyoming Catholic College, by a common contact named Jonathan Tonkowich, an Executive Vice President

2

at Wyoming Catholic College. Initially Mr. McCown represented that his employer was to receive a large addition to its endowment and therefore would need the services of an asset manager.

7. In March of 2021, however, Mr. McCown told me in a telephone conversation that he had amassed substantial personal wealth and was seeking investment advisory services on his own behalf. Accordingly, I put in motion the standard verification procedures, including seeking a variety of personal and financial information from Mr. McCown, and we created a Microsoft 365 shared folder into which he could upload the necessary documents (including, for example, bank statements, passport, driver's license, and questionnaires).

### Defendant McCown's (Purported) Bank Statements

8. In that regard, in late March of this year, Mr. McCown sent us the – purported – most recent three months of bank statements from his personal bank account at Wyoming Community Bank (with an account number ending in 3668). Those statements, accompanying this affidavit as Exhibits 1, 2 and 3 (attached hereto and incorporated herein by reference) respectively, showed very small balances in January and February of 2021, but showed a balance on the March 2021 statement of $750,323,282. That gargantuan sum derived – purportedly – from a transfer of $750 million on March 1, 2021 from Mr. McCown's business account (ending in 7190) at US Bank in Minneapolis.

9. After wiring funds to Mr. McCown in furtherance of the $15 million loan, we learned, to our understandable horror, that those WCB bank statements were forgeries (see paragraph 18 below).

10. Mr. McCown also uploaded purported US Bank statements supporting the transfer of funds to WCB. Specifically, he sent us what were supposedly the then-most recent three months of US Bank statements, for January through March of 2021 (Exhibits 4 through 6 respectively, attached hereto and incorporated herein by reference), showing a balance of

3

$753,827,565.56 in January, $825,378,726.44 in February and – after the purported $750 million transfer from US Bank to WCB on March 1, 2021 – $146,928,364.32 in March. Upon information and belief, those purported US Bank statements – which showed, among other things, three monthly deposits in excess of $92 million apiece from one single source – were also forgeries.

### The Investment Advisory Relationship and the Impersonation of WCB Vice President Kendall Hayford

11. Over the ensuing weeks, Mr. McCown and I discussed the details of an investment advisory relationship whereby we would set up, through the international bank BNP Paribas, a custodial account for his – purported – substantial wealth, which would initially be invested in a fund to be known as the Ducenta 80-20 Total Return Fund L.P. Mr. McCown, in his personal capacity, entered into an Investment Advisory Agreement (Exhibit 7, attached hereto and incorporated herein by reference) with Plaintiff's affiliate in order to facilitate that process, and until recently he paid the corresponding fees.

12. Various administrative steps were required to implement that relationship, including undertaking the Know-Your-Customer ("KYC") process and anti-money laundering ("AML") procedures, as well as obtaining various additional documents from Mr. McCown and his bank. To facilitate the necessary actions, on April 20th Mr. McCown informed me that "the person to reach out to at Wyoming Community Bank is Kendall Hayford. I don't have his email address, but his phone is (307) 310-5096." (Exhibit 8, attached hereto omitting email attachments and incorporated herein by reference.) Later that month, I received an e-mail purportedly from Mr. Hayford, "VP Branch President" at Wyoming Community Bank (with the signature block including the phone number identified by Mr. McCown), emanating from the e-mail address khayford@wyocommunityb.com and copying Mr. McCown. That e-mail (Exhibit 9, attached hereto and incorporated herein by reference) stated:

Paul McCown provided me with your contact information regarding transferring his funds to your organization. Please advise the information you need and a time to discuss if necessary.

I responded and my colleague Brian Kim eventually had a phone conversation with "Kendall Hayford" on May 5, 2021.

13. We have since learned that the domain "wyocommunityb.com" is not a domain used by Wyoming Community Bank; that it is not, and never has been, the e-mail address of WCB Vice President Kendall Hayford – who is in fact a real bank officer, and who has in fact had dealings with Paul McCown in connection with Mr. McCown's accounts at WCB – and that the phone number for Mr. Hayford supplied by Mr. McCown and appearing on the signature of e-mails from khayford@wyocommunityb.com is not, and never has been, the office or cell phone number of Kendall Hayford. See the accompanying affidavits of Mr. Hayford and WCB President Scott Estep, provided concurrently with this filing. See also Exhibit 10 (attached hereto and incorporated herein by reference), which demonstrates that the domain "wyocommunityb.com" was created only on April 30, 2021, the same day the first e-mail was sent to us from that domain.

14. Regrettably, we knew none of that at the time we were fostering our relationship with Mr. McCown. During the first three weeks of May, I exchanged or was copied on several e-mails with Mr. McCown and the false "Kendall Hayford" (at the above, illegitimate, "wyocommunityb.com" e-mail address), regarding the logistics necessary to transfer the (purported) funds in Mr. McCown's personal WCB account to the investment vehicle being created for that purpose. That process moved somewhat slowly, as discussed in paragraphs 27-31 below.

5

### Defendant McCown Seeks a $15 Million Loan
### Based On Forged and False Documentation

15. On May 5, 2021, Mr. McCown texted me that his business had a $26 million invoice outstanding to a supplier, and because his business account had around $16 million, "Would it be at all possible to float the difference (~10) on a short term loan? I was planning to have everything funded by now, but as we know, Wyoming [Community] Bank is taking its sweet time." (See Exhibit 11, attached hereto and incorporated herein by reference.) I responded that I would see what I could do and that plaintiff, in order to extend such a loan, would need some "confirm[ations] from Kendall" by way of "some kyc [Know Your Customer] [and] aml [Anti-Money Laundering] docs. . . . We live in a paper trail world." I also asked Mr. McCown to "send out an email to Kendall to release any and all info per your personal account info."

16. In the ensuing days, Mr. McCown and I exchanged multiple text messages to and from his cell phone (248-376-3761), regarding the requested loan and what would be necessary in order to extend the loan expeditiously, as he desired. In the course of those discussions he asked that the loan amount be increased to $15 million "so I wouldn't have to clean out my business account, but 10.5 is what I need [to] get to the invoice amount." That Mr. McCown's business might desire a loan at that juncture, notwithstanding the sum of money we understood to be in his personal bank account, was not surprising because I had previously advised him that movement into or out of his personal account, in the days preceding the (supposedly) imminent transfer of his personal wealth to the custodial account at BNP Paribas in furtherance of the investment advisory relationship, should be avoided if possible, as such movement would cause further scrutiny and delay implementation of the contemplated investment fund.

17. On May 7th, Mr. McCown e-mailed "Kendall Hayford," at the illegitimate e-mail address referenced above, as follows (Exhibit 12, attached hereto and incorporated herein by reference):

> In chatting with David this morning, he will need a release of all of my personal account information. I authorize you to give him any and all info he needs.

"Kendall Hayford" responded, "David, Let me know what information you will require." (*Id.*)

18. In furtherance of the following, we sought and obtained the following documentation from defendant McCown through the individual we understood to be WCB Vice President Kendall Hayford:

- A Deposit Account Control Agreement ("DACA") granting plaintiff operational control over Mr. McCown's personal bank account at WCB. Pursuant to the DACA, plaintiff was granted a security interest in that account and the bank was directed to "cease complying with all instructions or directions" from Mr. McCown regarding the account. The DACA with counterpart signatures from Mr. McCown and "Kendall Hayford" (in two places) is attached hereto and incorporated herein by reference as Exhibits 13 and 14; see paragraphs 2 and 5 and Exhibit A ("Notice of Exclusive Control").

- An "attestation," on (purported) WCB letterhead, stating that "The purpose of this document is an attestation of the account balance of Paul McCown's personal bank account, ending in -3668. As of today, May 7, 2021, the account balance is $761,481,265.21." That document bore the (purported) signature of Kendall Hayford, and concluded that "I affirm this balance in my capacity as an officer of the bank, its Corporate Vice President and Branch President" (Exhibit 15, attached hereto and incorporated herein by reference).

- A subsequent "attestation," identical to Exhibit 15 except dated four days later and setting forth the entire account number of ending in 3668 (Exhibit 16, attached hereto and incorporated herein by reference)

- Confirmation from "Kendall Hayford" ("Very good and understood"), sent from the illegitimate e-mail address, that the bank would comply with plaintiff's "Standing Instruction to Wyoming Community Bank," "[p]er the Deposit Account Control Agreement and as the Secured Party," that WCB would "provide us written prior notification of any withdrawal request from Paul McCown's account(s) at the Bank" and would "only release . . . funds after receiving our written authorization" (Exhibit 17, attached hereto and incorporated herein by reference).

7

And, of course, we possessed the March bank statement, Exhibit 3, that (fraudulently) reflected a balance in the account at that time of $750,323,282.83. According to the President of Wyoming Community Bank, that statement and the other statements provided to us by Mr. McCown purportedly from WCB were "not true and correct statements from WCB for the account ending in 3668 in Mr. McCown's name and appear to be forgeries" (see paragraph 4 of the Affidavit of Scott Estep, sworn to on June 10, 2021, submitted herewith as Exhibit B to the Complaint.

19. All of the "Kendall Hayford" signatures on Exhibits 13, 15 and 16 were forged; the contents of the Exhibit 15 and 16 "attestations" were false – defendant McCown did not have anything approaching three-quarters of a billion dollars in his account at WCB (see paragraph 4 of the Affidavit of Kendall Hayford, sworn to on June 10, 2021 ("Hayford Affidavit") submitted herewith as Exhibit C to the Complaint) – the e-mail purportedly from Kendall Hayford in Exhibit 9 was not in fact from Kendall Hayford; and the purported bank letterhead on Exhibits 15 and 16 was forged. We knew none of that at the time, unfortunately.

### The Loan Is Extended

20. On May 10, 2021, defendant McCown executed, on behalf of his company McCown Enterprises LLC, a Promissory Note in favor of plaintiff in the amount of $15 million (Exhibit 18, attached hereto and incorporated herein by reference). He also executed, in his individual capacity, a Security Agreement (Exhibit 19, attached hereto and incorporated herein by reference) granting plaintiff a "continuing security interest" in the account that was the subject of the previously-referenced DACA (Exs. 13 and 14).

21. Mr. McCown's signature on both of those documents was notarized by one April Pendleton, who upon information and belief was and is the Director of the Business and

Financial Aid Office at Wyoming Catholic College, where Mr. McCown was and is the Chief Financial Officer.

22. Paragraph 8.2 of the Promissory Note (Ex. 18) provided that if "[a]ny representation or warranty made or deemed by the Borrower to the Noteholder herein or in any certificate, document or report delivered in conjunction with the Loan is incorrect in any material respect or shall have been false or misleading in any material respect on the date as of which such representation or warranty was made or deemed made," that would constitute an Event of Default under the Promissory Note. On May 26, 2021, plaintiff declared the note in default on that basis and accelerated the amount due in accordance with the terms of the note.

23. Before we advanced any funds, my colleague Brian Kim telephoned WCB and asked for Mr. Hayford. He was eventually transferred to Mr. Hayford's voicemail, thereby confirming that Mr. Hayford was a real person who was truly a bank officer at WCB. Later that day – after, we now know, the real Mr. Hayford asked Mr. McCown what the call was about and Mr. McCown replied that he had "no idea" (see paragraph 15 of the Hayford Affidavit, submitted herewith as Exhibit C to the Complaint) – Mr. Kim received an e-mail from the illegitimate "Kendall Hayford" account apparently referencing the voicemail (Exhibit 20, attached hereto and incorporated herein by reference).

24. Mr. McCown provided us with wire instructions directing that the loan proceeds be sent to his business account at WCB, routed through its correspondent bank Banker's Bank of the West (Exhibit 21, attached hereto and incorporated herein by reference). On May 11, 2021, we wired the $15 million (less an origination fee) in accordance with the wire instructions, the Promissory Note and all of the supporting documentation referred to above.

### Defendant McCown Immediately Transfers
### The Loan Proceeds For His Personal Benefit

25. On May 11th, within hours or minutes of receiving the loan proceeds from plaintiff, Mr. McCown began transferring almost all of those millions of dollars out of his business's account at WCB (none of it to pay a purported "supplier"). Specifically, we understand that he made the following transfers:

(i) He sent Phillip McCown, believed to be his father, $375,000 on May 11.

(ii) He sent his brother-in-law and sister-in-law, Paul and Claire Alarcon, $750,000 on May 11.

(iii) He transferred $550,000 to his personal WCB account, on May 19, and that same day sent those funds from his personal account to a company named Trolan LLC, which is registered to conduct business in Wyoming but is located in Michigan (Mr. McCown's home state), and with which we believe Mr. McCown is affiliated and may well own or control.

(iv) He obtained, in person at WCB on May 11, a cashier's check payable to the State of Wyoming in the amount of $841,863.

(v) He sent $375,000 to the financial services firm Robert W. Baird and Company, where we believe Jonathan Tonkowich (Mr. McCown's colleague at Wyoming Catholic College who had introduced us to Mr. McCown) has an investment account. Eight days later, he sent another $375,000 to Robert W. Baird and Company.

(vi) Most significantly, however, on May 11, immediately upon receiving the $15 million from plaintiff, Mr. McCown transferred $10.5 million to the "Goldman Sachs Philanthropy Fund," which he then directed to transfer $10 million as an "anonymous donation" to Wyoming Catholic College, where (as noted) he is the Chief Financial Officer.

10

26. The Goldman Sachs-related transfers are reflected in Exhibits 22 through 25. The $750,000 transfer to Mr. McCown's brother-in-law and sister-in-law was confirmed by their lawyer (see Exhibit 26). The remaining transfers have been learned through our counsel's investigation, including what has been reported by WCB's counsel, and will be confirmed through the expedited discovery sought on this motion.[1]

**Defendant McCown Fraudulently Purports To Confirm
A Non-Existent Transfer of $761 Million From His Personal Bank Account, and
His Fraud Unravels**

27. In the days following his receipt of the proceeds of the $15 million loan – and without any knowledge on our part of the transfers referenced above – Mr. McCown continued to move forward with his stated intention to fund an investment advisory account with the massive amount of money purportedly held in his personal account at WCB. There were numerous exchanges of e-mails between myself, Mr. McCown and the illegitimate "Kendall Hayford" e-mail address, and text messages between myself and Mr. McCown, regarding necessary regulatory and logistical requirements, among other things.

28. In the course of those exchanges, "Kendall Hayford" supplied us with a required anti-money laundering letter, purportedly on WCB letterhead and executed by "Kendall Hayford" as "VP Branch President" (Exhibit 27), in a form previously provided to him by us. That signature, too, we now know, was forged.

29. Notwithstanding various delays during mid-May – delays that Mr. McCown attributed to "Kendall Hayford's" lack of sophistication and experience – on May 21, 2021 "Kendall Hayford" wrote to me (from the illegitimate e-mail address) that "The funds have been released" (Exhibit 28, attached hereto omitting attachment and incorporated herein by reference).

---

[1] One of the Goldman Sachs documents, Exhibit 22, reveals that Mr. McCown stated his e-mail address to be "pdm@trolanllc.com," thereby confirming his connection with the "Trolan" recipient of $550,000 set forth above.

11

A few hours later, Mr. "Hayford" confirmed "Details: amount: $761,000,000.00. Reference number is 0512B1OFD05D008127. BNP should see it come through shortly" (id.). And a few hours after that, Mr. "Hayford" sent a purported "Authorization for Wire Transfer" in the amount of $761,000,000" from the "Originator" Paul McCown to BNP Paribas, at the BNP account number we had provided, with the "ABA #, Swift Code, Sort Code" of "BNPAUS4NB25" (id. and Exhibit 29, attached hereto and incorporated herein by reference).

30. All of that was on Friday, May 21st. The funds did not arrive that day, or on the following Monday the 24th (or ever). A series of excuses and evasions were put forth by Mr. "Hayford," but early in the week of May 24th, our then-counsel was able to be in touch with WCB's President and then with the bank's outside counsel, and defendant McCown's fraudulent activities began to become known.

31. In connection with our counsel's investigation, an attorney then representing Mr. McCown stated that Mr. McCown denied signing the notarized loan documents exhibited here as Exs. 18 and 19; denied any knowledge of those documents; and denied borrowing money from plaintiff at all. At our counsel's request, that lawyer memorialized those denials in writing on June 1, 2021 (Exhibit 30, attached hereto and incorporated herein by reference):

> As you know, we represent Paul McCown. We have discussed with him the purported term sheet, promissory note, and security agreement . . . forwarded to us on Thursday. He informed us that he has never seen these documents before and did not borrow money from RIA R Squared. He has no knowledge of the origins of these documents.
>
> I can confirm that 248-376-3761 is Mr. McCown's cell phone number. Mr. McCown is not aware of any text exchanges with anyone at RIA R Squared about a loan or promissory note.

Given the facts presented above and below in this affidavit, and in the accompanying affidavits of (the real) Kendall Hayford and of WCB's President Scott Estep, all of those denials are incredible.

### Whereabouts Of the Proceeds of Our Loan

32. Wyoming Catholic College confirmed, through its counsel, that it has the $10 million "anonymous gift" received from the Goldman Sachs Philanthropy Fund. The College refused to accede to our request to provide us with ten days notice before transferring all or any part of those funds, and told us that it is "inclined to believe" Mr. McCown's denial of any fraud or wrongdoing, but did state that it has "voluntarily and unilaterally decided to hold the funds pending completion of its investigation, or its determination that [R Squared] does not intend to . . . provide [sufficient] support [for] its allegations."

33. Upon information and belief, Goldman Sachs has the $500,000 difference between the $10.5 million transferred to the Philanthropy Fund on May 11, 2021 and the $10 million transferred to Wyoming Catholic College the next day.

34. Paul and Claire Alarcon, Mr. McCown's brother-in-law and sister-in-law, confirmed through their counsel that they have the $750,000 that Mr. McCown sent to them on May 11, and they represented that they would provide us with seven days notice before transferring those funds.

35. Phillip McCown, believed to be defendant Paul McCown's father, has not responded to our counsel's inquiry and is presumed to be holding (or to have transferred or dissipated) the $375,000 we believe was sent to him by his son on May 11.

36. Trolan LLC, the company with which Mr. McCown appears to be affiliated and to which he sent $550,000, has not responded to our counsel's inquiry and is presumed to be holding (or to have transferred or dissipated) those funds.

37. Robert W. Baird and Company has acknowledged our counsel's inquiry, but without a subpoena or court order will not confirm receipt by Mr. McCown's fellow officer at

Wyoming Catholic College, Jonathan Tonkowich, of the two $375,000 transfers from Mr. McCown or provide any information about subsequent transfers or where those funds may be at this time.

38. $841,863 was apparently paid to the State of Wyoming.

39. The total of all known transfers of the $14.7 million wired to McCown Enterprises by plaintiff, in furtherance of the $15 million loan, is $13,766,863. While there may have been additional subsequent transfers, almost a million dollars – $933,137 to be exact – remains unaccounted for. All or part of that sum may yet be in the McCown Enterprises account at WCB, or otherwise within Mr. McCown's custody and control one way or another.

40. Furthermore, given the extensive and complicated nature of this fraudulent and misleading activity, we remain concerned that the funds whose whereabouts are not fully known – at least $3,450,000, or over $2,600,000 excluding the payment to Wyoming – may similarly quickly be dissipated. In addition, all of the disseminated funds may not remain stationary, and with any further transfers, the efforts, costs and expenses necessary to find and halt the dissipation will be compounded.

## Conclusion

41. Throughout the course of our relationship with Mr. McCown and his business entity, we reasonably relied upon his representations, as set forth above, and believed them to be true; and we reasonably relied upon the documentation he provided us (the exhibits referred to above as well as the Operating Agreement of McCown Enterprises, attached hereto as Exhibit 31 and incorporated herein by reference) and believed it to be genuine, including documents presented with the purported letterhead of WCB and with the purported signature of WCB officer "Kendall Hayford." Based upon that reasonable reliance, we entered into the $15

million loan transaction and wired the loan proceeds accordingly. We would not have done so in the absence of those representations and documents.

42. I have reviewed the Verified Complaint and Request For Immediate Injunctive Relief being filed contemporaneously with this affidavit, and I hereby verify its accuracy and truthfulness.

43. This matter has already significantly impacted the operations of 10, if not more, entities and individuals. It is crucial that Mr. McCown be halted immediately from engaging in further activities that will continue to disseminate and/or dissipate his assets, including the money he fraudulently obtained from Ria R Squared.

_____
David Kang

Sworn to before me this
21st day of June 2021

_____
Notary Public

ANTHONY TORRES
Notary Public - California
Los Angeles County
Commission # 2269018
My Comm. Expires Dec 1, 2022

15