Jason M. Tangeman, WSB # 6-3082
Nicholas & Tangeman, LLC
170 North Fifth St.
P.O. Box 0928
Laramie, WY 82073-0928
(307) 742-7140
jtangeman@wyolegal.com
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RIA R SQUARED, INC., a Delaware corporation, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 21-cv-00125-SWS |
| vs. | )<br>) HON. SCOTT W. SKAVDAHL<br>) |
| PAUL D. MCCOWN and MCCOWN ENTERPRISES, LLC, | )<br>)<br>) |
| Defendants. | ) |

## MOTION FOR STAY

Defendants Paul D. McCown ("Mr. McCown") and McCown Enterprises, LLC ("McCown Enterprises"), by and through their attorneys, Nicholas & Tangeman, LLC, hereby respectfully move the Court to stay this civil action for 90 days during the pendency of an ongoing criminal investigation into the same allegations on which the Complaint is based. In support of this Motion, Defendants state as follows:

## BACKGROUND

Plaintiff accuses Mr. McCown of orchestrating "a complex, calculated, methodical and fraudulent scheme," that included "intentionally and deliberately falsify[ing] financial documents," "forg[ing] bank statements," "impersonating a bank officer," and "defraud[ing]

R Squared out of the sum of $15 million." Compl., ECF No. 1 ¶¶ 1, 2. Not surprisingly, these allegations have also caught the attention of the federal government. The Department of Justice has convened a Grand Jury, which is currently investigating Mr. McCown for the same conduct alleged in the Complaint. (*See* Exhibit A.) It has also seized a substantial portion of the funds at issue, including but not limited to all assets in the Wyoming Community Bank accounts in the name of McCown Enterprises LLC, Paul D. McCown, and Paul D. McCown Advisory Services; $1.25 million from Paul D. McCown; and $400,000 from Phillip McCown. (*See* Exhibit B.)

According to the sworn testimony of an FBI Special Agent, these funds were seized pursuant to the Department of Justice's ongoing investigation of Mr. McCown for potential violations of the following criminal statutes:

- 18 U.S.C. § 1341 – Mail Fraud
- 18 U.S.C. § 1343 – Wire Fraud
- 18 U.S.C. § 1344 – Bank Fraud
- 18 U.S.C. § 1956 – Money Laundering
- 18 U.S.C. § 1957 – Unlawful Financial Transaction

Mr. McCown is, of course, presumed innocent of any criminal or civil wrongdoing. *British Am. Assur. Co. of Toronto v. Bowen*, 134 F.2d 256, 259 (10th Cir. 1943). And he has a constitutional right against compulsory self-incrimination. *See* U.S. Const. amend. V.[1] To this end Defendants have asserted their right against self-incrimination in Answering the Complaint.

---

[1] As a corporation, McCown Enterprises may not possess a Fifth Amendment privilege against self-incrimination. "However, a corporation nevertheless may be the unintended beneficiary of a corporate employee's personal invocation of the fifth amendment privilege. In particular, Fifth Amendment protection may in effect be extended to corporate defendants where its individual representatives may be implicated in the alleged wrongdoing." *Hilda M. v. Brown*, No. 10-cv-02495, 2010 WL 5313755, at *4 (D. Colo. Dec. 20, 2010) (internal quotation marks and citations omitted).

That right "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *See McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924).  And it privileges a defendant "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."  *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *see also Malloy v. Hogan*, 378 U.S. 1, 11 (1964) (explaining that the Fifth Amendment privilege "embraces [any answers] which would furnish a link in the chain of evidence needed to prosecute." (citation omitted)).

Because Plaintiff's Complaint is based on the very same allegations as ongoing criminal investigations by a Grand Jury and the Department of Justice, Defendants' responses to Plaintiff's Complaint could immediately result in criminal jeopardy.  As a such Defendants have asserted the privilege against self-incrimination in answering the Complaint.

Similarly, Defendants' answers to any discovery request served by Plaintiff could also provoke a Fifth Amendment response .  Although Defendants are not required to provide those answers so as to avoid self-incrimination, proceeding with this action while the threat of criminal prosecution is looming would inhibit Plaintiff's ability to seek relevant discovery and require this Court to confront "difficult question[s]" stemming from the invocation of the Fifth Amendment. *See* 5 Charles A. Wright et al., Federal Practice and Procedure, § 1280 (3d ed. 2002); 8 Charles A. Wright et al., Federal Practice and Procedure § 2018 (3d ed. 2002).

This Court has broad discretion to navigate the conflict between Plaintiff's prosecution of this action and Mr. McCown's constitutional right not to incriminate himself.  Defendants respectfully submit that, under the unique circumstances presented here, the best path forward is to stay this civil action for a limited period of 90 days while the criminal investigation proceeds.

That will allow for greater clarity into the scope of the criminal investigation and the potential for criminal jeopardy. Nor would a stay burden Plaintiff because Defendants have already stipulated to Plaintiff's requested preliminary injunction, which would remain in place throughout the stay. *See* Stip., ECF No. 22; Order, ECF No. 23. Accordingly, for the reasons that follow, Defendants respectfully request that this Court stay the above-captioned litigation for a period of 90 days while the criminal investigation moves forward.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Although the Constitution does not require a stay absent a substantial prejudice to a party's rights, "a stay may be appropriate under particular circumstances, such as parallel civil and criminal proceedings." *See Davis v. United States*, 20-cv-01348, 2020 WL 6206292, at *2 (D. Colo. Sept. 28, 2020).

"A motion for stay entails a case-by-case, fact-specific inquiry, with courts frequently citing some combination of six factors in determining whether to enter a civil stay: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." *See Brown*, 2010 WL 5313755, at *3.

## ARGUMENT

**I.    The Civil Case and the Criminal Investigation Completely Overlap.**

"The extent of overlap is the most important factor in ruling on a motion to stay." *Id.* When there is a "high degree of overlap and interrelatedness of the cases, dual litigation does not

4

serve the interests of efficiency or judicial economy," *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008), and "a stay of the civil proceeding is favored," *Sea Salt, LLC v. Bellerose*, 2:18-cv-00413, 2020 WL 2475874, at *2 (D. Maine May 13, 2020).

Here, the criminal investigation and the civil proceedings overlap entirely, weighing strongly in favor of a stay. On June 16, 2021, the Department of Justice seized Defendants' assets on suspicion of criminal conduct, and an FBI Special Agent swore that the government was investigating Mr. McCown for mail fraud, wire fraud, bank fraud, money laundering, and unlawful financial transactions. *See* Exhibit A. Six days later, Plaintiff filed this action and brought civil claims stemming from that *very same alleged conduct*. The commonality between the civil action and the ongoing criminal proceeding is overwhelming.

Further, Plaintiff's requested relief in the civil case both overlaps with and complicates the criminal proceedings. For example, Plaintiff has requested the return of funds that have been seized by the Department of Justice, but the Department of Justice has instructed Mr. McCown *not* to return certain funds to Plaintiff while the criminal investigation is ongoing. Put simply, a stay of the civil litigation would better enable the government to effectively conduct its criminal investigation. Indeed, if Plaintiff's allegations are true, the government's investigation merely facilitates the return of funds directly to Plaintiff.

Additionally, Plaintiff has requested punitive damages to "punish, reprimand and deter" Mr. McCown. *See* Compl. ¶ 134. Those are, of course, also the aims of criminal punishment. This Court cannot award punitive damages without first taking into account any criminal sanctions, *Alexander v. Meduna*, 47 P.3d 206, 218 (Wyo. 2002), and thus cannot determine whether Plaintiff is entitled to the relief it has sought until after the criminal proceedings have concluded in any event.

**II.     This Court Has Discretion to Issue a Pre-Indictment Stay.**

Although stays are sometimes issued after an indictment has been returned, "courts can and do grant pre-indictment stays, when warranted by particular circumstances." *Davis*, 2020 WL 6206292, at *3 (alterations omitted) (quoting *Patrick v. Apple*, 9:20-CV-0047, 2020 WL 4816015, at *4 (N.D.N.Y. Aug. 19, 2020)). "There is no question that a court has discretion to stay a civil litigation even in favor of a pending investigation that has not ripened into an indictment." *Id.* (quoting *In re 650 Fifth Ave.*, No. 08-cv-10934, 2011 WL 3586169, at *4 (S.D.N.Y. Aug. 12, 2011).

The two reasons that courts often consider prior to issuing a stay post-indictment apply with equal force here. "[F]irst, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *See Brown*, 2010 WL 5313755, at *4 (quoting *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). Both of those considerations warrant a pre-indictment stay in this case.

*First*, the Department of Justice has already seized Mr. McCown's property and convened a Grand Jury to investigate his alleged misconduct. That is more than sufficient to create a significant threat of self-incrimination. *See v. United States v. Von Behren*, 822 F.3d 1139, 1144-45 (10th Cir. 2016) (explaining that the Fifth Amendment right against self-incrimination applies wherever there is a "real and appreciable" danger that answers could "possibly have a tendency to incriminate" (internal quotation marks and citations omitted)); *see also Bellerose*, 2020 WL 2475874, at *2 n.1 ("The term 'investigation' is used by courts interchangeably or in tandem with 'proceeding' when discussing parallel civil and criminal

6

matters, and whether the criminal matter is, in fact, an investigation rather than a court proceeding does not appear to be the determining factor.").

*Second*, as explained below, Plaintiff would suffer no prejudice from a stay. Defendants have only requested a stay for a limited period of 90 days, obviating any concerns about the length of the delay. And Defendants have already stipulated to a preliminary injunction, mitigating any concern about potential harm in the meantime. On these facts, it is clear that "the lack of indictment is not an impediment to a stay." *See Davis*, 2020 WL 6206292, at *3.

### III. The Interests of the Parties Favor Issuing a Stay.

"A defendant who invokes the Fifth Amendment in response to civil discovery can be prejudiced in at least two ways in the civil proceeding: First, unlike in a criminal case, an adverse inference may be drawn from the invocation of the privilege. Second, invoking the Fifth Amendment privilege prevents the defendant from adequately defending his position in the civil case." *Bellerose*, 2020 WL 2475874, at *2 (internal quotation marks, alterations, and citations omitted). Although Plaintiff has "a legitimate interest in the expeditious resolution of [its] case," that interest is "trumped by [Mr. McCown's] interests in avoiding the quandary of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case." *See Transworld*, 886 F. Supp. at 1139.

The balance of the hardships especially weighs in favor of Defendants here, given the unique facts and circumstances presented by this action. In contrast to the significant Fifth Amendment problems raised by the absence of a stay, Plaintiff would not suffer any prejudice from the presence of one because, as explained: (i) Defendants have already stipulated to the preliminary injunction Plaintiff requested; (ii) the vast majority of the funds at issue in the Complaint have already been retrieved or seized by the Department of Justice, mitigating the fears of "dissipation" that permeate Plaintiff's Complaint, *see* Compl., ECF No. 1, ¶¶ 4, 49-50,

53-56, 63, 65, 118; (iii) Defendants are only requesting a temporary, 90-day stay; (iv) evidence will be preserved and gathered during the course of the government's investigation into this matter; and (v) Plaintiff may proceed with non-party discovery during the stay, and has already issued a number of non-party subpoenas, *see* ECF Nos. 13-16, 19-21, 25-26.  In fact, granting a temporary stay would actually further Plaintiff's interests, given that the government's and Plaintiff's goals in both the criminal investigation and civil case are one in the same.  Said differently, allowing the government to run its investigation absent the interference of civil case considerations may in fact *accelerate* the return of funds any funds to which Plaintiff is entitled.

## IV.     The Interests of the Public and This Court Favor Issuing a Stay.

This Court has an obligation to "ensure the 'just' determination of the instant action," *see Davis*, 2020 WL 6206292, at *5, and to mitigate the extent to which it results in prejudice to Mr. McCown's constitutional rights, *see* 8 Charles A. Wright et al., Federal Practice and Procedure § 2018 (3d ed. 2002) (citing cases).  Issuing a stay would also serve this Court's interests because "resolution of the criminal case may (1) increase the possibility of settlement of the civil case, and (2) may reduce the scope of discovery in the civil case as the evidence gathered during the criminal prosecution can later be used in the civil action."  *See Brown*, 2010 WL 5313755, at *6 (internal quotation marks and citation omitted).

No less than this Court, "[t]he public has an interest not only in the efficiency of the judicial process, but also in the preservation of an individual's ability to defend in a meaningful way against both criminal charges and civil claims." *Bellerose*, 2020 WL 2475874, at *3.  And "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here." *Transworld*, 886 F. Supp. at 1140.

## CONCLUSION

For all these reasons, Defendants respectfully request that this Court stay the above-captioned litigation for a period of 90 days during the pendency of the ongoing federal criminal investigation into the same subject matter alleged in the Complaint.

## LOCAL RULE 7.1 (b)(1)(A) CERTIFICATION

The undersigned counsel does hereby certify he has conferred in good faith with Defendants' counsel regarding this motion. Specifically, a complete copy of this motion was first emailed to counsel for consideration. Second, Defendants' counsel called Plaintiff's counsel and discussed the motion. Plaintiff does not agree to a stay.

DATED this 16th day of August, 2021.

Respectfully submitted,

s/ Jason M. Tangeman

Jason M. Tangeman, WSB # 6-3082
Nicholas & Tangeman, LLC
170 North Fifth St.
P.O. Box 0928
Laramie, WY 82073-0928
(307) 742-7140
jtangeman@wyolegal.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record in this matter registered with the ECF system.

/s/ Jason M. Tangeman