Stuart R. Day, WSB# 5-2244, sday@wpdn.net
Ryan J. Schwartz, WSB# 6-3611, rschwartz@wpdn.net
Ryan L. Ford, WSB# 7-4667, rford@wpdn.net
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
PO Box 10700
Casper, WY 82602
(307) 265-0700
(307) 266-2306 (facsimile)

Steven R. Popofsky, SPopofsky@kkwc.com
Pamela A. Frederick, PFrederick@kkwc.com
KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
500 Fifth Avenue
New York, NY 10110
(212) 880-9882
(212) 986-8866 (facsimile)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RIA R SQUARED, INC., ) <br> a Delaware corporation, ) <br> ) <br> *Plaintiff* ) <br> ) <br> v. ) <br> ) <br> PAUL D. MCCOWN, ) <br> MCCOWN ENTERPRISES, LLC, ) <br> ) <br> *Defendants* ) | Civil Action No. 21-cv-125-S |

## OPPOSITION TO MOTION FOR STAY

Plaintiff, Ria R Squared, Inc. ("Ria"), through counsel Williams, Porter, Day & Neville, P.C., respectfully submits this memorandum of law in opposition to defendants' motion for stay ("Motion for Stay").

## Argument

While mechanistically reciting case quotations and lists of "factors," defendants totally fail to grapple with the central question on this motion: What are they asking this Court to protect them against – what legally cognizable prejudice are they claiming they will suffer absent a stay – *given that they already invoked the Fifth Amendment and incurred the corresponding adverse inference on liability*?

Only under "extraordinary" circumstances are civil cases stayed pending criminal prosecution, and such stays are even more rare prior to any indictment.[1] But in any event, the rationale for such a stay is, as stated by defendants themselves:

> 'avoiding the quandary of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case.'[2]

*That rationale no longer exists here*. Whatever the situation may have been earlier in this case, defendants filed an answer on August 16th – represented by competent counsel with

---

[1] See, e.g., defendants' own cases of *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) and *Patrick v. Apple*, No. 9:20-CV-0047, 2020 WL 4816015, at *4 (N.D.N.Y. Aug. 19, 2020).

[2] Dkt. 43 (hereinafter "Motion") at 7, citing *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) (plaintiffs' "legitimate interest[s]," including "in the expeditious resolution of their case," are "trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case"). While "it is not unconstitutional to force a defendant to make this choice" (*Hilda M. v. Brown*, No. 10-cv-02495, 2010 WL 5313755, at *4 (D. Colo. Dec. 20, 2010), relied upon by defendants), "'the ultimate question . . . is whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil case by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights. . . .' The defendants have a significant interest in 'avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case'" (id.). The issue is phrased similarly in defendants' case *Davis v. United States of America*, No. 20-cv-01348, 2020 WL 6206292, at *4 (D. Colo. Sept. 28, 2020) ("'When considering a stay in a matter involving parallel criminal and civil proceedings, the primary debate centers on the criminal defendant's potential waiver or invocation of his Fifth Amendment rights'").

full knowledge of the consequences – invoking the Fifth Amendment dozens of times in response to virtually every substantive allegation giving rise to liability in this suit (Dkt. 42, *passim*).  Those invocations gave rise to an adverse inference under indisputably applicable law; see, e.g., *Baxter v. Palmigiano*, 425 U.S. 308 (1976) and its progeny, as admitted on page 7 of the Motion ("an adverse inference may be drawn from the invocation of the privilege").

Defendants accordingly are now subject to a summary judgment motion (at least as to liability), which plaintiff intends to file in the near future after resolution of this motion, if permitted.  The sole function of the requested stay at this point, therefore, would be to delay entry of judgment against defendants, <u>not</u> to "mitigate [any] prejudice to Mr. McCown's constitutional right[]"against self-incrimination (Motion at 8).  That ship has sailed.

Furthermore, every argument offered by defendants falls apart upon examination. Most notably, the very first sentence of defendants' Argument states that "'The extent of overlap is the most important factor in ruling upon a stay'" (Motion at 4), but defendants omit the <u>reason</u> such overlap is generally considered an important factor:  As set forth in defendants' own case of *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (cited in defendants' brief at pages 6, 7, and 8), this factor is important because "[i]f there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay" – in other words, it is the "overlap" that creates the "quandary."  But here, as noted, defendants no longer face any such quandary (by their own doing) and hence there is "no need for a stay."

As another example, defendants argue (somewhat remarkably) that the requested stay "would actually further Plaintiff's interests . . . and may in fact accelerate the return of any

funds to which Plaintiff is entitled" (Motion at 8). Plaintiff can decide its own interests for itself, and the Court should not impose a stay over plaintiff's objection because of defendants' mis-characterization of plaintiff's interests.[3]

Similarly, defendants seek improperly to argue the government's purported interest where the government has not asserted such, and indeed has expressly stated the opposite. See Motion at 5: "Put simply, a stay of the civil litigation would better enable the government to effectively conduct its criminal investigation." But the Department of Justice and the FBI have not sought any stay; this would be a very different motion if they had. In stark contrast, in *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) – which defendants cite with a snippet of quotation, but which is manifestly inapplicable on the facts – it was the U.S. Attorney's office that sought to intervene, in a civil case brought by the S.E.C. against individual defendants, seeking to stay the civil case over the objections of the defendants, who wanted the civil case to continue. In the same vein, in defendants' case of *Davis v. United States of America*, No. 20-cv-01348, 2020 WL 6206292, at *2 (D. Colo. Sept. 28, 2020) the government was a defendant being sued by a prisoner, and the government sought a stay because the case arose "out of the same incident for which [plaintiff] is currently being criminally investigated." Those cases clearly are no precedent here.

---

[3] Defendants also suggest that a ruling on punitive damages must await resolution of any (not-yet-existing) criminal case. The case they cite, *Alexander v. Meduna*, 47 P.3d 206, 218 (Wyo. 2002), does not in fact hold what they say it does – see Motion at 5 ("This Court cannot award punitive damages without first taking into account any criminal sanctions . . ., and thus cannot determine whether Plaintiff is entitled to the relief it has sought until after the criminal proceedings have concluded in any event") – but more fundamentally, if a criminal conviction would bolster any aspect of plaintiff's civil case, plaintiff (again) can decide for itself whether it wishes to wait for that or proceed to seek judgment at this time based on the admissions in defendants' Answer.

In fact both the Assistant United States Attorney in charge of the investigation, and the FBI agent operating under her supervision, have not only told plaintiff's lawyers that they have no desire to impede the civil case at all, but they have actually urged third-party recipients of the fraudulently-obtained funds to cooperate with plaintiff's efforts on the civil side. "Put simply," the Court should not assume a position by the U.S. government that the U.S. government has not chosen to assert.

And in that regard, while the Department of Justice may well have "instructed Mr. McCown not to return certain funds to Plaintiff while the criminal investigation is ongoing" (Motion at 5), defendants' funds have now been seized by the government, as they admit (id. at 2). Obviously plaintiff cannot obtain funds that the FBI is holding (and has no intention of seeking to do so), even if it obtains a judgment, but the requested stay has no impact on what happens to those funds because defendants no longer have control over them.

Defendants miss the point entirely when they argue that a stay would "[not] burden Plaintiff because Defendants have already stipulated to Plaintiff's requested preliminary injunction [against transferring assets]." Motion at 4; see also id. at 7: "Plaintiff would not suffer any prejudice from the [requested stay] because . . . Defendants have already stipulated to the preliminary injunction Plaintiff requested [and] the vast majority of funds at issue in the Complaint have already been retrieved or seized by the Department of Justice, mitigating the fears of 'dissipation' that permeate Plaintiff's Complaint." But a "preliminary" injunction is just that: preliminary. The ultimate goal of any lawsuit, including this one, is to obtain a judgment, and the injunction here was only interim relief seeking to preserve assets in anticipation of an eventual judgment.

Even if Mr. McCown complies with the injunction – which is no sure thing; given the adverse inference, the Court can conclude that he is dishonest and untrustworthy, to say the least, and he has stalled plaintiff's repeated requests that he identify and itemize certain assets so that compliance can be assured – that does not move plaintiff any closer to a judgment. "[S]tays of the normal proceedings of a court should be the exception rather than the rule," as acknowledged in defendants' case of *Hilda M. v. Brown*, No. 10-cv-02495, 2010 WL 5313755, at *4 (D. Colo. Dec. 20, 2010) ("'the right to proceed in court should not be denied except under the most extreme circumstances'"). Of course a stay here would "burden" plaintiff in delaying the ultimate relief that it seeks.

That delay could be for quite a long time, but more importantly no delay at all is warranted under the circumstances, and defendants' contention that "Plaintiff would suffer no prejudice from a stay" is simply wrong (Motion at 7). Defendants' comment that they have "only requested a stay for a limited period of 90 days, obviating any concerns about the length of the delay" (id.; see also id. at 8 to the same effect) is misleading, because defendants' counsel himself informed plaintiff's counsel that the grand jury in Wyoming only meets every other month and that it is not uncommon for indictment of a defendant to take six months to a year. We can thus reliably expect another stay request at the end of the first 90 days (yet another reason not to grant the disfavored pre-indictment stay). But even if the stay were "only" for 90 days, as discussed above it would in no way protect Mr. McCown's constitutional rights during that period, nor serve the objectives of the caselaw granting such stays. It would only delay the entry of judgment, which is not an interest of defendants that the Court should indulge.

Finally, defendants argue that "proceeding with this action . . . would inhibit Plaintiff's ability to seek relevant discovery and require this Court to confront 'difficult question[s]' stemming from the invocation of the Fifth Amendment" (Motion at 3).  Plaintiff has no present intention to take Mr. McCown's deposition, but should plaintiff seek to do so in the future, defendants would be free to renew this motion at that time.  At present, there are no "difficult questions" for this Court to confront given that defendants already have invoked the Fifth Amendment and subjected themselves to the corresponding adverse inference and summary judgment motion.

## Conclusion

According to defendants' own case of *Davis v. United States of America*, No. 20-cv-01348, 2020 WL 6206292, at *2 (D. Colo. Sept. 28, 2020), "When applying for a stay, a party must demonstrate a clear case of hardship or inequity."  Having chosen already to invoke the Fifth Amendment and thereby subject themselves to judgment, defendants should not be permitted to delay the consequences of that choice and to impede plaintiff's ability to seek such a judgment.  Accordingly, the Court should deny plaintiff's Motion for Stay, without prejudice to renewal if circumstances change.

**RESPECTFULLY SUBMITTED this 30th day of August, 2021.**

       RIA R SQUARED, INC.,
       a Delaware corporation,

          *Plaintiff*.

       By: /s/: Ryan L. Ford
       Stuart R. Day, WSB# 5-2244
        sday@wpdn.net
       Ryan J. Schwartz, WSB# 6-3611
        rschwartz@wpdn.net
       Ryan L. Ford, WSB# 7-4667
        rford@wpdn.net
       WILLIAMS, PORTER, DAY & NEVILLE, P.C.
       PO Box 10700
       Casper, WY 82602
       (307) 265-0700
       (307) 266-2306 (facsimile)

       Steven R. Popofsky,
        SPopofsky@kkwc.com
       Pamela A. Frederick,
        PFrederick@kkwc.com
       KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
       500 Fifth Avenue
       New York, NY 10110
       (212) 880-9882
       (212) 986-8866 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing pleading was served upon counsel of record via the ECF/CM Filing System (or otherwise as indicated below), this 30th day of August 2021.

| | |
|---|---|
| Jason Tangeman | [ X ] Electronic Delivery |
| Nicholas & Tangeman | ECF/CM |
| 170 N. 5th Street | [  ] Fax |
| Laramie, WY 82073-0928 | [  ] Overnight Delivery |
| | [  ] U.S. Mail |
| | [  ] e-mail to: |

*By:    /s/: Ryan L. Ford*