Jason M. Tangeman, WSB No. 6-3082
NICHOLAS & TANGEMAN, LLC
P.O. Box 928; 170 N. 5th St.
Laramie, WY 82073
(307) 742-7140
Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RIA R SQUARED, INC., a Delaware corporation | ) ) ) | Case No. 21-CV-125-S |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | |
| PAUL D. MCCOWN, and MCCOWN ENTERPRISES, LLC, | ) ) ) | |
| *Defendants.* | ) | |

## OPPOSITION AND RESPONSE TO PLAINTIFF'S MOTION AND MEMORANDUM FOR PARTIAL SUMMARY JUDGMENT (DOC. 86 AND 87)

COMES NOW Defendants, Paul D. McCown and McCown Enterprises, LLC, by and through counsel, Jason M. Tangeman, of Nicholas and Tangeman, LLC, and hereby opposes and objects to the *Plaintiff's Motion for Partial Summary Judgment* and *Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment* for the following reasons:

**A.    INTRODUCTION.**

The Plaintiff alleged eight (8) claims in its Complaint: preliminary injunction, breach of contract, piercing the corporate veil, fraud (intentional and in the inducement), negligent misrepresentation, fraudulent transfer and/or conveyance, breach of the covenant of good faith and fair dealing and punitive damages.

On December 22, 2021 the Plaintiff moved for partial summary judgment on Count IV of its Complaint – Fraudulent Transfer and/or Conveyance and sought a Judgment in the amount of $14.7 million dollars. (Doc. 60)  The Plaintiff did not request pre or post judgment interest.  The Plaintiff also reserved the right to seek punitive damages.  On March 17, 2022 the Court granted the Plaintiff's Motion for Partial Summary Judgment in the amount of $14.7 million dollars on Count IV and allowed the Plaintiff to reserve the right to seek punitive damages on Count IV. (Doc. 72)

On April 11, 2022 Plaintiff filed a Rule 54 (B) Motion for Entry of Judgment on the $14.7 million. (Doc. 73.)  Defendants filed a timely objection pointed out that punitive damages are not a "claim" under Wyoming law and Rule 54 (B) prohibited the bifurcation of damages from liability on Count VI. (Doc. 74).

On May 16, 2022 Plaintiff filed its Reply. (Doc. 77).  The Plaintiff plead that "[b]ased upon current pleadings and advancements in the criminal proceedings, Plaintiff hereby advises the Court and Defendants it waives its right to seek punitive damage relating only to the fraud claims . . . ." (*Id*.).  The Plaintiff purported to "reserve" its right to claim punitive damages on its remaining claim.  Relying upon said waiver, on May 19, 2022 the Court entered a Partial Final Judgment on Fraud Claim in the amount of $14.7 million dollars without any pre or post judgment interest as it was not requested. (Doc. 78).

On July 11, 2022 Mr. McCown was sentenced in the matter of *United States of America v. McCown*, Case No. 22-CR-23-SWS. (Doc. 39).   On July 20, 2022 the Court entered its *Amended Judgment* in the criminal matter. (Doc. 44).  Of relevance to this Opposition and Response, the Court ordered restitution in favor of the plaintiff Ria R. Squared in the total amount of $15,589,986.09 (principle $14,700,000.00 plus prejudgment interest $949,986.09). (Id.)  The total amount reflected a credit to Mr. McCown in the amount of $60,000 to be paid as restitution to the victim Johnathan Tonkowich. (Id.)  Mr. McCown was further to be credited with any amounts recovered by Ria R Squared in its civil actions so as to avoid any double-recovery.

On July 11, 2022 (date of sentencing) Mr. McCown deposited with the Clerk of the District Court $347,513.74 for the purpose of paying, in part, the above-referenced restitution. (See receipt attached).

In total, it appears Ria has received the following payments:

| | | |
|---|---|---|
| a. | February 7, 2022 | $23,699.33 (Phillip McCown settlement payment) |
| b. | July 12, 2022 | $347,513.74 (Paul McCown Restitution payment) |
| b. | July 19, 2022 | $60,000.00 (Johnathan Tonkowich credit) |
| c. | July 18, 2022 | $13,303,176.73 (forfeiture action) |

(Doc. 87-1).  **In total, the plaintiff Ria R. Squared has received $13,734,389.80 in either settlement payments, restitution, credit and forfeiture.** Ria R. Squared has apparently not settled its claims against the Wyoming Catholic College in Civil Action No. 21-CV-222-S. Counsel is of information and belief settlement shall be approximately $270,000.00.  Further,

counsel has recently been contacted by New York attorney Curtis Warner who advises that notwithstanding the $23,699.33 payment by Mr. Philip McCown, Ria R. Squared continues to prosecute claims against Mr. Phillip McCown in an effort to collect funds.

This second motion for summary does not appear to address all of the Plaintiff's claims. Specifically, the motion only applies to breach of contract, breach of the covenant of good faith and fair dealing, piercing the corporate veil.

**B.   SUMMARY OF ARGUMENT.**

Punitive damages are not a claim in Wyoming subject to a summary judgment and the Plaintiff is not otherwise entitled to additional punitive damages pursuant to relevant case law and in light of the fact Mr. McCown has gone to prison for his conduct.  Second, the principal amount upon which damages shall be calculated is $14.7 million and not $15 million pursuant to the Promissory Note itself and the doctrines of waiver/estoppel.  Third, the Court has already ruled on the amount of principal and prejudgment interest in the criminal matter and that amount is binding in this civil matter pursuant to the doctrine of collateral estoppel.  Fourth, post-judgment interest shall be calculated at the federal, statutory rate.

**C.   STANDARD OF REVIEW.**

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Vitkus v. Beatrice, Co.*, 11 F.3d 1535, 1538 (10th Cir. 1993.) The Court "must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Id.* at 1539 *citing Deepwater Invs., Ltd v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

"To be a "genuine" factual dispute, there must be more than a mere scintilla of evidence." *Id.*  In this context, "[t]o avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Id. citing Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) "Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Id.* (citations omitted).

**D.**     **BURDEN OF PROOF.**

The moving party bears the initial burden of showing that there is an absence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

**E.**     **DISCUSSION.**

1.     *A summary judgment on punitive damages is not available as a matter of law.*

The Plaintiff's second motion for summary judgment is only as to breach of contract, breach of the implied covenant of good faith and fair dealing, piercing the corporate veil and punitive damages claims. The Plaintiff has already obtained a $14.7 million dollar judgment as to its fraud in the inducement and intentional misrepresentation claim. (Doc. 78). The Plaintiff waived its right to seek pre and post judgment interest as well as punitive damages as to this fraud claim. (Doc. 77). Plaintiff has not moved for summary judgment as to negligent misrepresentation (Count V) and fraudulent transfer and/or conveyance (Count VI).

Plaintiff argues that it is entitled to a summary judgment on its punitive damages "claim." The Plaintiff then does not specify what amount of punitive damages it is seeking and instead suggests to the Court that $132,000,000.00 might be appropriate; but, then asks for attorney's fees in an unknown amount to be determined at some future hearing.

The Wyoming Supreme Court has held that punitive damages unto themselves are not a "claim" susceptible to a summary judgment. *Errington v. Zolessi*, 9 P.3d 966, 969 (Wyo. 2000). On this basis alone the motion for summary judgment is without merit. Punitive damages are a remedy available following a trial on the merits. A trial on the merits still remains as the Plaintiff has not moved for summary judgment on all claims.

If the Court decides to entertain punitive damages at this summary judgment stage part and parcel of a fraud claim[1], the Plaintiff still has not produced any evidence in its Rule 26 disclosures discovery of its attorney's fees. The Plaintiff has the burden of proof on summary judgment and there is no evidence in the record of what Plaintiff believes its punitive damages actually are. In the absence of an actual number Mr. McCown and the Court has no way of evaluating whether the request for attorney's fees otherwise comports with *Farmers Ins. Exch. v. Shirley*, 958 P.2d 1040 (Wyo. 1040). On this alternative basis a summary judgment is not warranted.

Notwithstanding the failure to tell the Court and Mr. McCown exactly what they want, the Plaintiff performed very little of an analysis pursuant to *Shirley*. The Plaintiff has not made a "reasonable relationship" analysis. Mr. McCown has gone to prison and there is no threat of future harm from him specifically nor his conduct. The actual harm (fraud/theft) is admittedly serious; however, Mr. McCown immediately cooperated with the FBI, confessed, and has assisted in the return and payment of approximately 92% of the monies actually stolen. Further, the Court has entered Judgment against Mr. McCown in the amount of $15,589,986.09 in the companion criminal case which payments will be collected by the government following his release.

The Plaintiff has failed to make a complete reprehensibility analysis. Again, the fact that Mr. McCown immediately confessed to the FBI, agreed to a preliminary injunction freezing all assets and that 92% of the money actually stolen has been returned to the Plaintiff is relevant here. The conduct is serious, but not "reprehensible" at least as defined by *Shirley*.

There is no evidence in the record or argued that Mr. McCown profited from his criminal activates. Mr. McCown disgorged himself of all profit he obtained from the theft thus eliminating this element. Other than half the proceeds of the sale of his Lander home, Mr. McCown is destitute. The Lander home was purchased with money before Mr. McCown met the Plaintiff. The remaining home sale proceeds have been given to his wife to support her and their five (5) children while he is incarcerated.

As discussed above, the Plaintiff has raised the issue of the cost of the litigation; but, has not produced any evidence of that expense. Moreover, the Promissory Note itself provides that if "any certificate, document or report" is "false or misleading in any material respect" that this is a

---

[1] Defense counsel is frankly uncertain which claims Plaintiff is attempting to attach its punitive damages claim and therefore reserves the right to respond upon receipt of clarification.

an event of default. (See Doc. 1-3, p. 61 of 97 at ¶ 8.2).  Mr. McCown provided false banking documents that led to the loan in this case and therefore was in default.

The Plaintiff did not include an attorney's fees clause for a prevailing party upon a dispute in their Promissory Note.  The Plaintiff is a sophisticated investor.  This was their choice.  The point is, in the rubric of a punitive damages analysis, attorney's fees are not warranted as fraud was specifically contemplated as a condition of default and which **<u>did not</u>** include attorneys fees and costs as a reasonable recovery thereof.

Finally, there are no other civil actions against Mr. McCown for similar conduct further mitigating against punitive damages.  Instead, Mr. McCown has now gone to prison for 63 months and incurred a $15,589,986.09 Judgment which are in fact punitive damages in the *Shirley* analysis.

In summary, some of the *Shirley* factors are present, but Mr. McCown has mitigated against the harm he caused.  In addition, the contract itself specifically addresses fraud yet excludes attorney's fees and costs as a remedy.  More importantly, Mr. McCown has been removed from society and away from his wife and five (5) children for more than five (5) years.  Under the totality of the circumstances, Mr. McCown has been punished for his activates and no additional monetary burden should be added to his already substantial obligations.

2.      *The principal amount to calculate damages is $14.7 million dollars.*

The parties' Promissory Note provides that the amount of the principal of the loan is $15 million dollars and that interest is to be calculated "thereon". (See Doc. 1-3, p. 58 of 97 at Preamble).  However, ¶ 3.1 of the Promissory Note is entitled "Interest Rate" and provides that interest is to be calculated on the "outstanding principal amount." (Id. at p. 59 of 97.)  Mr. Kang has testified that the actual amount of money transferred to Mr. McCown's account was $14.7 million dollars minus a $300,000 origination fee. (Doc. 87-1, p. 2 of 6, ¶ 5.)  The actual amount of the loan was $14.7 million and this is the "outstanding principal amount".

In its first motion for summary judgment, the plaintiff requested judgment on $14.7 million and not $15 million. (Doc. 61 at p. 14 of 16.)  Similarly, its Rule 54 (b) Motion for Entry of Judgment Plaintiff only requested a principal amount of $14.7 million and not $15 million. (Doc. 73).  Finally, during the companion criminal proceedings the plaintiff claimed restitution in the principal amount of $14.7 million and not $15 million.

The point is, the Plaintiff loaned $14.7 million dollars to Mr. McCown and the Promissory Note provides that interest is only to be calculated on that "outstanding principal amount". Support for that conclusion can be found in the fact the Plaintiff has three times only requested damages and restitution in the principal amount of $14.7 million. Whether by the plain language of the Promissory Notes or the doctrines of waiver and/or estoppel, the principal amount upon which interest should be calculated is $14.7 million.

3.  *The Court has already calculated prejudgment interest in the amount of $949,986.09 and the Plaintiff is collaterally estopped from challenging said amount.*

The doctrine of collateral estoppel will bar a claim if these four elements are met:

(1) the issue previously decided is identical with the one presented in the action in question;

(2) the prior action has been finally adjudicated on the merits;

(3) the party against whom the doctrine is invoked was a party, or in privity with a party to the prior adjudication, and;

(4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1207 (10th Cir. 2001) (internal quotation marks and citation omitted).

The application of collateral estoppel or issue preclusion from a criminal proceeding to a civil proceeding has been called "cross-over collateral estoppel." *In re Martinez*, No. 7-09-15502 JL, 2012 WL 1641926, at *7 (Bankr. D.N.M. May 10, 2012) (*citing State v. Bishop*, 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct.App.1992)(observing that "[t]he term 'cross-over' collateral estoppel' has been used to describe the application of collateral estoppel from a civil proceeding to a criminal proceeding, or vice versa.")(citing Susan W. Brenner, "Crossing Over:" The Issue–Preclusive Effects of a Civil/Criminal Adjudication Upon a Proceeding of the Opposite Character, 7 N.Ill.U.L.Rev. 141 (1987)).

The concept of cross-over collateral estoppel is not unique to the Tenth Circuit. *See e.g. Choma v. Tucker*, 443 F. Supp. 3d 545, 551 (D. Vt. 2020) ("The use of cross-over estoppel has been recognized approvingly by the Vermont Supreme Court."); *Taylor v. Powell*, No. 09-10199, 2010 WL 4340626, at *3 (E.D. Mich. Oct. 27, 2010) (" Relatedly, 'cross-over estoppel exists 'where

an issue adjudicated in a civil proceeding is claimed to be precluded in a subsequent criminal proceeding, or vice versa.")

On July 1, 2022 the United States filed and served its *Restitution Memorandum* in *USA v. McCown*, Criminal No. 22-CR-23-SWS (Doc. 35) working directly and closely with and on behalf of the Plaintiff Ria R. Squared.  In addition to only requesting $14.7 million in principal restitution, the United States requested "lost investment income" on behalf of the Plaintiff and in lieu of the 5.5% interest provided for in the parties Promissory Note.  On July 11, 2022 the matter proceeded to sentencing which included a restitution hearing. (Doc. 39).

Following the hearing the Court rejected the request for "lost investment income" and instead simply imposed interest at the Promissory Note rate of 5.5% between the date of loss (May 11, 2021) and sentencing (July 11, 2022) and in the amount of $949,986.09.  Neither Mr. McCown nor the United States has filed a timely notice of appeal as to the restitution issue.  In this regard the issue of prejudgment issue was previously and finally adjudicated on the merits and identical to the current question before the Court.  Ria R. Squared was represented by the United States and the restitution issue and has had a full and fair opportunity to litigate this issue of principal and prejudgment interest.  As a result, Ria R. Squared should be limited to damages $14.7 million of principal and $949,986.09 of prejudgment interest.

4.    *Post judgment interest is to be calculated at the federal rate on the Promissory Note.*

Title 28, Section 1961 (a) of the Judiciary and Judicial Procedure Act provides:

Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

The general rule is that "a cause of action reduced to a judgment merges into the judgment and the contractual interest rate therefore disappears for post-judgment purposes." *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009) (citations omitted).  In this context, "[p]Parties may contract to, and agree upon, a post-judgment interest [rate] other than that specified in § 1961. *Id.*"

However, to do that there must be "clear, unambiguous and unequivocal language" in the contract that provides as such. *Id.*

On July 20, 2022 the Court entered its Amended Judgment in a Criminal Case in the amount of $15,589,986.09. Pursuant to the general rule post-judgment interest began to run at the statutory rate as contemplated in 28 USC § 1961. There is no "clear, unambiguous or unequivocal language" in the Promissory Note that provides that interest rate of 5.5% continues post-judgment.

## G.    CONCLUSION.

The Plaintiff cannot obtain a summary judgment on punitive damages as it is not a "claim" under Wyoming law. Further, the Plaintiff has failed to satisfy the *Shirley* standard for punitive damages and Mr. McCown has already gone to prison for more than five (5) years. Principal and prejudgment interest has already been determined in the criminal proceeding and that ruling has a preclusive effect in this civil proceeding. Finally, post-judgment interest should be calculated at the federal, statutory rate.

DATED this 10th day of November 2022.

/s/ Jason M. Tangeman
Jason M. Tangeman, WSB # 6-3082
Nicholas & Tangeman, LLC
170 North Fifth Street, P. O. Box 928
Laramie, WY 82073-0928
Phone: (307) 742-7140
Fax: (307) 742-7160

### CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record in this matter registered with the ECF system.

/s/ Jason M. Tangeman